**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHRYN E. HUTCHINSON, | ) | CASE NO. 5:16CV00018 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND DECISION** |
| HONEYMOON CORPORATION, et al., | ) | (Resolving Doc. 11) |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendants, Honeymoon Corporation (at times "the Honeymoon") and Stephen Rector. Docs. 11. Defendants have moved for judgment as a matter of law on the second Amended Complaint filed by Plaintiff Kathryn E. Hutchinson. The Court finds that no genuine issues of material fact exist as to Plaintiff's federal claims. As such, for the following reasons, Defendants are entitled to judgment as a matter of law, and their motion for summary judgment on Plaintiff's federal claims is GRANTED . The Court declines to exercise jurisdiction over Plaintiff's state-law claims and thus, the remaining claims are DISMISSED WITHOUT PREJUDICE.

### I.  FACTS AND PROCEDURAL HISTORY

Defendant Stephen Rector owns Defendant Honeymoon Corporation, which operates as a local diner doing business as the Honeymoon Grille. The restaurant opened for business in late August of 2013. Doc. 11-1. That same month, the Honeymoon Grille hired Plaintiff Kathryn

1

Hutchinson[1] to work as a server. Doc. 9. She also worked as a food runner and supervisor until her employment was terminated in late October 2015. Doc. 11-1.

In her second Amended Complaint, Plaintiff alleges that she worked more than 40 hours per week but was not paid overtime in violation of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Wage Fair Standards Act. Doc. 5. She also asserts a claim for retaliation after Defendants discussed filing counterclaims. Doc. 5. Defendants later filed a motion to dismiss, which was converted to a motion for summary judgment. Defendants then supplemented their motion, and Hutchinson filed her brief and opposition. The matter is now ripe for a decision by this Court.

## II.  LEGAL STANDARD OF REVIEW

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id.* At 252. Further, on summary judgment, the inferences to be drawn from underlying facts must be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether,

---

[1] Throughout the briefing, the parties use "Hutchinson" and "Hutchison" interchangeably in describing the Plaintiff. Because "Hutchinson" is in the caption of the original Complaint, the Court will use this version of Plaintiff's name.

2

in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute and must do so by citing to the record. Fed.R.Civ.P. 56(c)(1)(a).

### III. LEGAL ANALYSIS

> The Fair Labor Standards Act (FLSA) passed by Congress in 1938, is a comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours worked. The FLSA prohibits employers from employing any worker for a work week longer than forty hours unless the employee receives compensation for employment in excess of forty hours. 29 U.S.C. § 207(a)(1). Such compensation must be at a rate not less than one and one half times the regular rate at which the employee is employed. *Id.*
>
> * * *
>
> There are essentially two ways in which employees gain protection under the FLSA. First, employees may be employed in an enterprise engaged in commerce or the production of goods for commerce and thus enjoy "enterprise coverage." Second, employees may themselves be engaged in commerce or in the production of goods for commerce, enjoying "individual" coverage.

*Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 802-803 (N.D. Ohio 1996); 29 U.S.C. §207(a). Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. §203(b); *Williams v. Hooah Sec. Services, LLC*, 729 F. Supp. 2d 1011, 1013 (W.D. Tenn. 2010).

To recover unpaid overtime, the burden rests first on the plaintiff to prove the following factors by a preponderance of the evidence: 1) there exists an employer-employee relationship; 2) there was an engagement in activities within coverage of the FLSA; and 3) the defendant failed to pay the plaintiff the overtime pay required by law. *Kowalski*, 920 F. Supp. at 802-83. "Once the plaintiff has made a prima facie case, the burden shifts to the employer to show by a preponderance of the evidence that one of the exemptions afforded by Section 213 of the FLSA applies to the employment in question." *Id., citing* 29 U.S.C. §201 et seq.

### A. Enterprise Coverage

To qualify under the FLSA's enterprise coverage, the enterprise must have:

> employees engaged in commerce or in the production of goods for commerce, or [have] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... [must have an] annual volume of sales made or business [that] is not less than $500,000.

29 U.S.C. 203(s)(1)(A)(i)-(iii). Thus, for enterprise coverage to apply, a business must have: 1) employees engaged in commerce or handling goods moved in commerce, and 2) annual gross volume of sales or business done of at least $500,000. *Jones v. Freedom Rain, TLC*, 401 Fed. Appx. 409, 411 (11th Cir. 2010). According to 29 C.F.R. § 779.259:

> [t]he annual gross volume of sales made or business done of an enterprise consists of its gross receipts from all types of sales made and business done during a 12–month period. The gross volume of sales made or business done means the gross dollar volume (not limited to income) derived from all sales and business transactions including, for example, gross receipts from service, credit, or other similar charges.... The gross volume of sales or business includes the receipts from sales made or business done by the retail or service establishments of the enterprise as well as the sales made or business done by any other establishments of the enterprise, exclusive of the internal transactions between them.

*Id.*

4

Here, Defendants argue that the Honeymoon does not have an annual volume of sales of $500,000 or greater. Doc. 11. In support of this argument, Defendants present an affidavit from Defendant Rector and tax returns for the Honeymoon from years 2013 and 2014. Doc. 11-1. In his affidavit, Rector testifies that he has been "responsible for maintaining the financial records of the Honeymoon, and [has] done so for all of its almost 2.5 years in business." Doc. 11-1. "The Honeymoon has never generated annual gross volume of sales in the amount of $500,000 or more." Doc. 11-1. Gross receipts or sales from 2013 total $44,633. Doc. 11-1 at 5. For 2014, gross receipts or sales total $316,746. Doc. 11-1 at 11. Finally, in 2015, gross sales totaled $468,029.11. Doc. 11-1 at ¶4. Thus, looking at the tax forms, the Honeymoon has not generated $500,000 or more in annual gross sales for any year at issue.

Plaintiff argues that a genuine issue of material fact exists as to enterprise coverage because 1) she alleges that the Honeymoon has understated its income to the IRS, and 2) she further alleges that the Honeymoon sales should be stacked with another restaurant owned by Defendant Rector's father. Doc. 21. The Court finds these arguments insufficient to demonstrate a genuine issue of material fact.

   1. Underreported Income

First, Plaintiff alleges that the Honeymoon has misstated its gross sales to the IRS. In support of this argument, she testifies that as a part-time manager:

> I personally paid employees cash from cash sales on a regular basis as required by my employer. This money was not declared or reported as income for the company or as salary for the employees.
>
> One employee I paid was Troy. Troy was employed as a line cook during 2014 and 2015 at a rate of $13 per hour and regularly worked 40-hour weeks from which payroll taxes were not withheld. However through discovery

5

> Troy reported income via his W-2 for 2015 was only $110 and 2014 was 1421.75 [sic].
>
> I declare that the numbers on his W-2 are false.
>
> I declare that if this amount of cash that was not declared was declared [sic] the revenue of the defendant would have been over $500,000.

Doc. 21-1. While Plaintiff makes these bald allegations, she does not testify that she has personal knowledge of the Honeymoon's bookkeeping practices, that she was involved in managing the finances of the Honeymoon, that she tracked income or maintained financial or business records for the restaurant, or that she was otherwise involved in tax preparation for the Honeymoon. As such, she has no personal knowledge or ability to testify as to the amount of revenue the Honeymoon made or would have made under any circumstances. Instead, her allegations as to the Honeymoon's gross sales or business are pure speculation. The Court is not permitted to deal in speculation, and her testimony does not create a genuine dispute of material fact on the issue of enterprise coverage.

Furthermore, not only does the Plaintiff lack personal knowledge as to the bookkeeping or finances of the Honeymoon, the payroll tax is an expense that is not calculated in determining gross sales or business for a company. Payroll taxes are a business expense that can be used in the calculation of net revenue, profit, or loss. But whether a company pays payroll taxes for employees is irrelevant to their gross sales or business calculation. As such, even assuming the Plaintiff is correct that certain employees were paid "under the table," these facts do not affect the gross sales or business calculation. As such, Plaintiff cannot demonstrate a genuine issue of material fact as to the Honeymoon's annual sales or business by looking to the company's payroll taxes.

2. Stacking Income with Another Restaurant

Plaintiff argues that the Honeymoon is subject to enterprise coverage under the FLSA because Defendant Rector's father owns a pizza restaurant, called Gionino's Pizza in Massillon, Ohio, and the income from the restaurant should be added to the Honeymoon's gross sales for enterprise coverage. "To establish that two entities constitute a single enterprise under the FLSA, Plaintiff must prove three elements: '(1) related activities; (2) unified operation or common control; and (3) a common business purpose.' All three elements must be present for an enterprise to exist." *Cabral v. Lakes Cafe Sports B. & Grill, Inc.*, 09-21128CIV-MCALILEY, 2010 WL 1372457, at *3 (S.D. Fla. Mar. 31, 2010) (quoting *Donovan v. Easton Land & Dev., Inc.,* 723 F.2d 1549, 1551 (11th Cir.1984)). Whether two entities constitute an enterprise, is a question of law for the court to decide. *Id.* (citing *Tafalla v. All Florida Dialysis Serv., Inc.,* No. 07–80396, 2009 WL 151159, *9 (S.D.Fla. Jan.21, 2009)).

In her brief in opposition, Plaintiff argues:

> Moreover, as to the $500,000 annual gross receipts threshold, a plaintiff can meet FLSA enterprise income requirements by "stacking" the income of related entities. *Cabral v. Lakes Café Sports Bar & Grille, Inc.*, 2010 WL 1372457 (11th Cir.). Until December 31, 2014, Defendant Stephen Rector was a co-owner with his father, Daniel Rector, of both Honeymoon Corporation, LLC and Rector Enterprises, LLC. See "Transfer of Business Ownership Agreement," Exhibit E to Defendants' father. Both entities operated restaurants. The Honeymoon Grille and Gionino's Pizza of Massillon. The combined gross receipts of these two common enterprises exceeded $500,000 in 2014. Honeymoon's federal tax return filed with the court indicates gross sales of $316,746 for 2014. The **online Company Information Database** *Buzzfile* lists estimated annual revenue for Gionino's Pizza of Canton (**a similarly-sized franchisee that has been in business for roughly the same number of years as Gionino's of Massillon**) as $848,228.

Doc. 21 at 4 (emphasis added).

7

The Court need not analyze whether the two entities constitute a single enterprise under the FLSA because, even if they did, the Plaintiff cannot present admissible evidence of the business sales of Gionino's Pizza of Massillon.  Presenting a printout from an online source about "**estimated** annual revenue" of **another pizza franchisee** – not at issue here – is wholly insufficient to create factual dispute and survive summary judgment.  As such, Defendants are entitled to judgment as a matter of law on the issue of enterprise coverage under the FLSA.

### B.  Individual Coverage

> As to individual coverage, "the test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. H.B. Zachry Co.,* 362 U.S. 310, 324, 80 S.Ct. 739, 4 L.Ed.2d 753 (1960) (citation omitted); *see also Marshall v. Victoria Trans. Co.,* 603 F.2d 1122, 1124 (5th Cir.1979) ("[A]ny regular contact with commerce, no matter how small, will result in coverage.") (quoting *Mabee v. White Plains Publ'g Co., Inc.,* 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946)). Thus, "the character of the employee's activities is determinative, not the nature of the employer's business." *Overstreet v. N. Shore Corp.,* 318 U.S. 494, 498 (1943).

*Gulden v. Menages, Inc.*, 3:14-CV-1041, 2014 WL 4232791, at *3 (M.D. Tenn. Aug. 25, 2014). "Whether an individual employee is engaged in commerce under the FLSA is a 'fact specific inquiry into the employment activities' of the employee." *Duby v. Shirley May's Place, LLC*, No. 16-11443, 2017 WL 1021062, at *4 (E.D. Mich. Mar. 16, 2017) (quoting *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009)). According to the Department of Labor's interpretation of the FLSA, employees are:

> …"engaged in commerce" when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof.... Typically, but not exclusively, employees engaged in interstate or foreign commerce include employees in distributing industries, such as wholesaling or retailing, who sell, handle or otherwise work on goods moving in interstate commerce

8

> as well as workers who order, receive, pack, ship, or keep records of such goods; clerical and other workers who regularly use the mails, telephone or telegraph for interstate communication; and employees who regularly travel across State lines while working.

*Warren v. Sitto*, 16-10507, 2017 WL 2951626, at *2 (E.D. Mich. Apr. 21, 2017) (*citing* 29 C.F.R. § 779.103).

In her brief in opposition to summary judgment, Plaintiff argues that "…as a part of [her] employment [she] used the instrumentalities of interstate commerce by regularly processing credit cards [and] …[she has] actual knowledge that most if not all of those who pay by credit cards issued by out-of-state banks and financial institutions. These credit cards were Visa, Mastercard, and Discover card." Doc. 21 at 5-9; Doc. 21-1. Yet, Plaintiff also admits "…that the Sixth Circuit has not ruled on the issue of the scope of credit-card processing as a 'regular' use of an instrumentality of interstate commerce…." Doc. 21 at 7-8. This Court need not reach a conclusion on the issue of scope. Rather, the Court need only look to the evidence presented in opposition to summary judgment to find that Plaintiff has failed to demonstrate a genuine factual dispute on the issues of individual coverage.

In her affidavit, the Plaintiff makes a conclusory statement that the credit cards she allegedly processed were from out-of-state banks, but she provides no evidence as to which particular banks or financial institutions issued the credit cards, the specific locations where the credit card charges were processed, or even how she knows that the credit cards were from out of state banks or financial institutions. She provides no specific, factual basis for her general conclusion that "…most if not all of those who pay by credit card use cards issued by out-of-state banks and financial institutions." The U.S. Supreme Court has held that general averments in an affidavit, without "…'specific facts' needed to sustain the complaint…" are insufficient to

9

overcome a motion for summary judgment. *Lujan v. Natl. Wildlife Fedn.*, 497 U.S. 871, 888–89 (1990). In *Lujan*, the Supreme Court stated:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. …Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Cf. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[T]he plaintiff could not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint' "), quoting *First National Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.
>
> At the margins there is some room for debate as to how "specific" must be the "specific facts" that Rule 56(e) requires in a particular case. …It will not do to "presume" the missing facts because without them the affidavits would not establish the injury that they generally allege. That converts the operation of Rule 56 to a circular promenade: plaintiff's complaint makes general allegation of injury; defendant contests through Rule 56 existence of specific facts to support injury; plaintiff responds with affidavit containing general allegation of injury, which must be deemed to constitute averment of requisite specific facts since otherwise allegation of injury would be unsupported (which is precisely what defendant claims it is).

*Id.*

Here, Plaintiff makes the general averment that the credit cards she processed were from out of state banks, but she does not give any specific facts to support this conclusion. Instead, she states that the cards she processed were mainly Visa, MasterCard, and Discover. Doc. 21-1. Plaintiff wants this Court to presume missing facts such as which banks issued the cards or where the charges themselves were processed. This is the very situation the *Lujan* Court cautioned

10

against. The Plaintiff's affidavit fails to provide specific facts sufficient to demonstrate a genuine issue of material fact on the issue of individual FLSA coverage. As such, Defendants are entitled to summary judgment.

### C. Retaliation

> The anti-retaliation provision of FLSA provides that an employer is prohibited from "discharg[ing] or in any other manner discriminat[ing] against [an] employee because such employee has filed [a] complaint or instituted ... any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). The burden-shifting analysis in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to a FLSA claim of retaliation. *See, e.g., Moore v. Freeman,* 355 F.3d 558, 562 (6th Cir.2004). To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *See, e.g., Williams v. Gen. Motors Corp.,* 187 F.3d 553, 568 (6th Cir.1999). Such a prima facie showing of retaliation "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination. *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 883 (6th Cir.1996).

*Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

It is undisputed that, after Plaintiff filed her Complaint, Defendants sent a letter to Plaintiff's counsel describing Defendants' potential counterclaims and conveying a monetary offer to settle the case. It is also undisputed that Defendants have never filed a counterclaim in this case. Instead, after receiving the letter, Plaintiff filed an amended complaint, adding a claim for retaliation based on Defendants' threats to file a counterclaim. Finally, it is undisputed that there

is no case law in the Sixth Circuit Court of Appeals that would allow for a claim of FLSA retaliation based on discussions about a defendant's potential counterclaims.

Given this, Plaintiff cannot demonstrate an issue of a material fact as to an "adverse action" being taken against her. The Court is not prepared to find (where the Sixth Circuit has not yet ruled) that the mere filing of a non-frivolous counterclaim is retaliation; however, the Court need not make such a finding here since the Defendants have not filed a counterclaim at all. The FLSA requires the employer to have taken an adverse action against the Plaintiff in order to allege retaliation. Thus, without the filing of the counterclaims, no action was taken against the Plaintiff. Where Plaintiff argues that the threat of filing the counterclaim is enough due to its possible chilling effect, that concern is not borne out by the facts since the Plaintiff had already filed her claims by the time she received the letter from Defendants, and after reading the letter, she then filed two subsequent amended complaints.

Given all of this, the Plaintiff cannot establish a prima facie case of retaliation. Defendants are entitled to judgment as a matter of law on the issue of FLSA retaliation for threatening to file a counterclaim.

## IV. CONCLUSION

Reviewing the facts in a light most favorable to the Plaintiff, no genuine dispute of material fact exists on any of FLSA claim against the Defendants. Therefore, the Defendants are entitled to judgment as a matter of law on Plaintiff's federal claims, and their motion for summary judgment is GRANTED. Consequently, the Court declines to exercise its jurisdiction over Plaintiff's remaining state-law claims. Therefore, the Court DISMISSES the remaining state-law claims WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: 12/19/2017                                         */s/John R. Adams*
                                                          JOHN R. ADAMS
                                                          UNITED STATES DISTRICT JUDGE